J-A19005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STEVEN PREDMORE, | |
| Appellee | No. 238 EDA 2017 |

Appeal from the Order Entered December 12, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000062-2016

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED OCTOBER 04, 2017**

The Commonwealth filed this interlocutory appeal from the trial court's order granting Appellee's, Steven Predmore, *habeas corpus* motion to dismiss the charge of attempted homicide.  After careful review, we affirm.

The trial court summarized the pertinent factual and procedural history of this case as follows:

> On December 12, 2015, at or about 12:45 a.m., Alex Marsicano was driving past his ex-girlfriend's residence when he noticed [Appellee]'s vehicle.  Mr. Marsicano stopped near [Appellee]'s vehicle.  As he was leaving the residence, [Appellee] appeared in the parking lot.  A confrontation occurred between [Appellee] and Mr. Marsicano when Cheyenne Eberhart, Mr. Marsicano's ex-girlfriend, broke up the fight.  [Appellee] then retrieved a gun from his vehicle.  [Appellee] fired 3 shots, two shots struck the back of Mr. Marsicano's calves and the third shot missed.  [Appellee] then left the scene in his vehicle.  Mr. Marsicano contacted a friend who subsequently took him to the hospital.  When interviewed by the police, [Appellee] indicated that he was acting in self-defense and that he just wanted to stop the beating.

On January 15, 2016, the Commonwealth filed a Criminal Information charging [Appellee] with Attempted Criminal Homicide, 18 Pa.C.S.[] § 901(a), (F1); Aggravated Assault, 18 Pa.C.S.[] §2702 (a)(4), (F2); Simple Assault, 18 Pa.C.S.[] § 2701(a)(2), (M2), and Recklessly Endangering Another Person, 18 Pa.C.S.[] § 2705, (M2).

Trial Court Opinion (TCO), 12/12/16, at 1-2 (citations omitted).

Appellee filed the at-issue *habeas corpus* motion on May 16, 2016. A hearing was held on June 20, 2016 to address the matter, following which the court granted the motion on December 12, 2016, thereby dismissing the attempted homicide charge.

The Commonwealth filed a timely notice of appeal on January 3, 2017, and certified its compliance with Pa.R.A.P. 311(d) ("**Commonwealth appeals in criminal cases.--**In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). The Commonwealth also filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on January 17, 2017. The trial court subsequently issued a Rule 1925(a) statement on February 7, 2017, indicating that it would rely upon its December 12, 2016 opinion which accompanied the order under review.

The Commonwealth now presents the following question for our consideration:

Whether the [t]rial [c]ourt erred by dismissing Count 1 of the Criminal Information charging Attempt to Commit Criminal Homicide after the charge had been bound over following a

preliminary hearing and despite the Commonwealth['s] presenting evidence of record that [Appellee] acted with a specific intent to kill when he retrieved a Ruger 9mm pistol from his vehicle, put a clip in the pistol, aimed and fired three shots at the retreating victim, striking the victim in the legs?

Commonwealth's Brief at 5.

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. **Commonwealth v. James**, 863 A.2d 1179, 1182 (Pa. Super. 2004) (*en banc*). In **Commonwealth v. Karetny**, 583 Pa. 514, 880 A.2d 505 (2005), our Supreme Court found that this Court erred in applying an abuse of discretion standard in considering a pre-trial *habeas* matter to determine whether the Commonwealth had provided *prima facie* evidence. The **Karetny** Court opined, "the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Id.** at 513, 880 A.2d 505; **see also Commonwealth v. Huggins**, 575 Pa. 395, 836 A.2d 862, 865 (2003) ("The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law[.]"). The High Court in **Karetny** continued, "[i]ndeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Karetny**, **supra** at 513, 880 A.2d 505. Hence, we are not bound by the legal determinations of the trial court.

**Commonwealth v. Dantzler**, 135 A.3d 1109, 1111–12 (Pa. Super. 2016).

> A petition for writ of *habeas corpus* is the correct method for a defendant to test whether the Commonwealth has, before trial, established a *prima facie* case. **Commonwealth v. Karlson**, 449 Pa. Super. 378, 674 A.2d 249, 251 (1996). To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. **Commonwealth v. Fowlin**, 450 Pa. Super. 489, 676 A.2d 665, 673 (1996). In an effort to meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof. **Id.**

Proof beyond a reasonable doubt is not required at the *habeas* stage, but the Commonwealth's evidence must be such that, if accepted as true, it would justify a trial court in submitting the case to a jury. *Id.* Additionally, in the course of deciding a *habeas* petition, a court must view the evidence and its reasonable inferences in the light most favorable to the Commonwealth. *Id.* Suspicion and conjecture, however, are unacceptable. *Id.*

*Commonwealth v. Carroll*, 936 A.2d 1148, 1152 (Pa. Super. 2007) (abrogation on other grounds recognized in *Dantzler*, *supra*).

The Commonwealth contends that several aspects of the victim's testimony demonstrated that it had established a *prima facie* case for attempted homicide under the facts of this case. First, the victim testified that Appellee aimed the gun at him initially at chest to face level." N.T., 1/8/16, at 24. Second, the victim also testified that he had turned to run away when Appellee drew his firearm, and therefore the victim had his back to Appellee when he fired three shots at him. *Id.* at 12-13. Third, the victim, as noted above, was shot twice in the calf.

The Commonwealth asserts that these facts were sufficient to show that Appellee took "a substantial step toward the commission of a killing, with specific intent in mind to commit such an act." Commonwealth's Brief at 15 (quoting *Commonwealth v. Jackson*, 955 A.2d 441 (Pa. Super. 2008)). The Commonwealth argues:

In *Jackson*, the evidence established that just before Detective Dove began to chase [Jackson], he was armed with a gun and shooting at Wesley. As [Jackson] ran from Detective Dove, [he] turned, looked at the detective, and raised his arm toward the detective. The Court in *Jackson* stated that "it is not

essential that the record show that Appellant took aim and fired the gun at the detective". Under the substantial step test that controls, the focus is on the acts Appellant completed, not on the acts that remain for the actual commission of Detective Dove's murder. **Jackson** at 445. Based on the actions [Jackson] took, the fact finder could have reasonably found that [Jackson] took a substantial step toward intentionally killing the detective. **Id.**

The Court in **Commonwealth v. Donton**, 654 A.2d 580 (Pa. Super. 1995), concluded that the evidence established that [Donton] took a substantial step toward the attempted murder of his wife by loading a gun equipped with a scope, driving miles to where she was, and reconnoitering the area with the gun within easy reach, notwithstanding that defendant did not actually aim or fire the gun at her.

Here, [Appellee] went to his vehicle and retrieved a pistol from the glove box of the vehicle and put a clip in the pistol, cocked it and then pointed it at Alexander Marsicano. [Appellee] then fired three shots at Alexander Marsicano as Alexander Marsicano was attempting to run away, striking him in both legs. Under the substantial step test, and focusing on the acts [Appellee] completed, not on the acts that remain for the actual commission of the crime, the trial court erred by concluding that the Commonwealth failed to establish a *prima facie* case for the charge of Attempted Homicide. Based on the actions [Appellee] took, the fact finder could have reasonably found that [he] took a substantial step toward the intentional[] killing of Alexander Marsicano.

Furthermore, the argument that [Appellee] was acting in self-defense is without merit. Evidence as to justification or excuse does not negate a determination of a *prima facie* case, but is a matter that is properly raised at trial. **Commonwealth v. Benz**, 565 A.2d 764 (Pa. 1989).

Based on the evidence presented, the Commonwealth has established a *prima facie* case for the charge of Attempted Homicide and the Trial Court erred as a matter of law by granting [Appellee]'s *Habeas* motion and dismissing the charge of Attempted Homicide.

Commonwealth's Brief at 15-17.

Although the Commonwealth's brief clearly focuses on the "substantial step" test, the trial court did not base its ruling on the Commonwealth's ostensible failure to establish a *prima facie* case of the *actus reus* of the attempted homicide charge. Instead, the court determined that the Commonwealth failed to establish a *prima facie* case for the *mens rea* element of the offense: specific intent to kill. TCO at 4 ("Given these facts, we cannot find that [t]he specific intent to kill has been established."). Indeed, Appellee argued in his *habeas* motion that the Commonwealth had failed to demonstrate evidence sufficient to establish specific intent to kill, not that the evidence was insufficient to establish a substantial step toward the commission of a homicide. *Habeas Corpus* Motion, 5/16/16, at 2 ¶ 5 (unnumbered pages). Accordingly, we reject the reasoning offered by the Commonwealth to reverse the order of the trial court. The *actus reus* element of the offense of attempted homicide can be conceded without concluding that Appellee possessed the requisite *mens rea* for that offense.

The Commonwealth has offered no argument in its brief regarding which facts in the record tended to demonstrate a specific intent to kill. As Appellee and the trial court suggest, this is not a case where such intent can be inferred from a wound to a vital part of the victim's body. There is also nothing in the record resembling the sort of premeditation and/or lying-in-wait which occurred in **Donton**, **supra**.

Moreover, we find nothing in the record regarding the shooting itself that could suggest intent to kill to a reasonable juror. Even assuming the

victim's credibility with respect to the allegation that Appellee pointed his gun at the victim's upper body initially (as we must under our standard of review), we do not view that act as demonstrative of a specific intent to kill in the circumstances of *this* case. Appellee, immediately thereafter, fired his weapon from extremely close range, according to the victim's testimony,[1] and yet only struck him in the calf. There was no testimony suggesting that Appellee's shooting arm was impaired in any way, or that any struggle for the gun occurred. This combination of the location of the victim's injuries and the close proximity of the shooting, along with the absence of any evidence that Appellee was temporarily impaired in his ability to aim, belies any suggestion that a reasonable juror could conclude that Appellee acted with the intent to kill based upon the act itself.[2] This array of evidence may still support a finding of malice, but it is not sufficient to support a finding of specific intent to kill. Accordingly, we conclude that the trial court did not

_____

[1] The victim testified that Appellee was only 2.5-3 feet away from him when he fired the shots. N.T., 1/8/16, at 12-13.

[2] The location of injuries naturally becomes less indicative of intent as the range between the victim and shooter increase. However, it is virtually impossible to shoot someone in the legs from a few feet away without aiming in that general direction and, therefore, away from more vital parts of their body. Given that no evidence of record suggests that Appellee's shooting arm was bumped or otherwise obstructed when the shots were fired, the only reasonable inference that can be made with respect to his intent is that he did not specifically intend to shoot to kill.

err when it granted Appellee's *habeas corpus* motion to dismiss the charge of attempted homicide.

Order **_affirmed_**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2017